IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MICHAEL CURTIS REYNOLDS ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | |
| ) | Case No. 3: 22-cv-001429-JPG |
| ERIC WILLIAMS, ) | |
| ) | |
| Respondent. ) | |

**MEMORANDUM AND ORDER**

This is a post-conviction proceeding. Before the Court is Petitioner Michael Curtis Reynolds' ("Petitioner" or "Reynolds") § 2241 (Doc. 1). This case is now before the Court for a preliminary review of the Petition pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the U.S. District Courts.

**I.   Background**

To begin, this is Petitioner's fifteenth (15) petition in this district.[1] Petitioner is currently detained in a Bureau of Prisons Facility, the Greenville Federal Correctional Institute ("FCI Greenville"), in Bond County, Illinois. Federal Bureau of Prisons: FCI Greenville, https://www.bop.gov/locations/institutions/gre (last visited September 22, 2022). His expected release date is November 17, 2032. *Id*.

In 2007, a jury in the Middle District of Pennsylvania found Reynolds guilty of five terrorism-related crimes. United States v. Reynolds, Case No. 05-cr-493 (M.D. Pa.) ("criminal

---

[1] *See Reynolds v. Werlich* (Case No. 3:18-cv-01031-DRH); *Reynolds v. Werlich et al* (Case No. 3:18-cv-01186 DRH); *Reynolds v. USA* (Case No. 3:19-cv-00436-SMY); *Reynolds v. Terrell* (3:19-cv-00460-SMY); *Reynolds v. US Attorneys Office* (Case No. 3:19-cv-00524-JPG); *Reynolds v. Werlich* (Case No. 3:19-cv-00731-NJR); *Reynolds v. Werlich* (3:19-cv-01038-NJR); *Reynolds v. Werlich* (3:19-cv-01223-SMY); *Reynolds v. Werlich* (3:20-cv-00097-NJR); *Reynolds v. USA* (3:20-cv-00101-SMY); *Reynolds v. Williams* (Case No. 3:20-cv-00990-SMY); *Reynolds v. Williams* (Case No. 3:21-cv-00421-JPG); *Reynolds v. USA* (Case No. 3:21-cv-00901-SMY); *Reynolds v. Williams* (Case No. 3:22-cv-00003-SMY) (pending); *Reynolds v. Williams* (Case No. 3:22-cv-00139-JPG).

case"). He was sentenced to a total of 360 months on five counts: attempting to provide material support to a foreign terrorist organization (18 U.S.C. § 2339B); attempting to provide material support to damage an interstate gas pipeline facility by means of force or explosive (18 U.S.C. § 2339A(a) & § 2); soliciting others to damage an interstate pipeline facility by means of force or explosive (18 U.S.C. § 373); distributing information through the internet on the manufacture and use of an explosive device (18 U.S.C. § 842(p)(2)); and possession of a grenade (18 U.S.C. §§ 5841, 5861(d), & 5871). The Third Circuit Court of Appeals affirmed his sentence and conviction. *See United States v. Reynolds*, 374 F. App'x 356, 363 (3d Cir. 2011).

Reynolds' initial motion under 28 U.S.C. § 2255 was dismissed on August 15, 2012 (Doc. 479 in criminal case); *Reynolds v. United States*, 2012 WL 12981962 (M.D. Pa. Aug. 15, 2012). He subsequently filed several collateral attacks in the sentencing court that were dismissed as unauthorized successive motions brought under § 2255. (See Doc. 492 in criminal case, Nov. 28, 2012); *Reynolds v. United States*, Case No. 16-cv-1843 (M.D. Pa.) (Docs. 522, 537 in criminal case, Dec. 9, 2016); *Reynolds v. United States*, Case No. 17-cv-750 (M.D. Pa.) (Docs. 557, 562 in criminal case, Dec. 21, 2017).

Petitioner has made various arguments throughout the year, including requesting relief pursuant to legal changes from various cases. He previously filed § 2241 petitions pursuant to *Mathis v. United States*, 136 S. Ct. 2243, 2250 (2016), *Dimaya*, and *United States v. Davis*, 139 S. Ct. 2319 (2019); both were denied. *Reynolds v. Werlich*, No. 19-CV-1223-SMY, 2020 WL 3316071 (S.D. Ill. June 18, 2020), reconsideration denied, No. 19-CV-1223-SMY, 2020 WL 3639900 (S.D. Ill. July 6, 2020); *Reynolds v. Werlich*, Case No. 18-cv-1031-DRH (S.D. Ill., dismissed June 21, 2018, Doc. 20). Additionally, he has previously moved for release under Rule 60, *Hazel-Atlas*, which was also denied. *Reynolds v. United States*, Case No. 21-CV-901-SMY

(S.D. Ill., dismissed July 21, 2022, Doc. 6). Additionally, this Court has also previously twice dismissed Petitioner's claims on very similar arguments as alleged in the instant petition. *Reynolds v. Williams*, Case No. 21-CV-421-JPG (S.D. Ill., dismissed May 28, 2021, Doc. 4); *Reynolds v. Williams*, Case No. 22-CV-139 (S.D. Ill., dismissed March 21, 2022, Doc. 20).

With this extensive litigation history in mind, the Court turns to the petition at issue.

**II.     Analysis**

Rule 4 provides that upon preliminary consideration by the district court judge, "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner." Rule 1(b) of those Rules gives this Court the authority to apply the rules to other habeas corpus cases, such as this action under 28 U.S.C. § 2241. After carefully reviewing the Petition, the Court concludes that this action is subject to dismissal.

Petitioner's petition is 90 pages. It includes various printouts of caselaw intermingled with Petitioner's assertions. Many case briefing summaries are also highlighted at various points. Court does its best to parse through Petitioner's main claims.

First, Petitioner first complains that Dr. Faisal Vakil Ahmed disobeyed CDC rules and caused a permanent lung scarring for Petitioner, wrongfully administered prostrate medication when he instead had an oversized lymph node, and various medical related claims. He indicates these claims are pending in another case, and therefore the Court need not address them here. Additionally, such claims are improperly brought under habeas. In cases where a prisoner "is not challenging the fact of his confinement, but instead the conditions under which he is being held, [the Seventh Circuit] has held that [he] must use a § 1983 or Bivens theory." *Id*. (citing *Glaus v. Anderson*, 408 F.3d 382, 386 (7th Cir. 2005).

Next, Petitioner argues that the BOP does not allow him to take "Life Connections Programming" and he receives no benefit from FSA credits because BOP states Petitioner has a "crime of violence." Petitioner claims he is wrongfully denied First Step Act ("FSA") credits, should be deemed a minimal recidivist level and should therefore be in a minimum security facility (Greenville is currently a medium security facility).

Petitioner argues that the BOP has refused to consider legal changes in certain case law and determine certain crimes such as robbery, arson, and kidnapping are not "crimes of violence." Specifically, Petitioner states "arson is not a crime of violence." (Doc. 1 at 82). Petitioner argues that "attempted arson" was "used to establish his Base Level at Sentencing" and it is in legal error because "federal arson is not a 'crime of violence.'" (Doc. 1 at 88). First, as stated in the background of this case, Petitioner was convicted of *terrorism related offenses* in his criminal case. Petitioner was convicted of "attempted arson" in 1978 and it was a prior conviction listed in his PSR.[2] Petitioner spends a large proportion of his petition (and other petitions within this district) focused on this "attempted arson" charge.

On December 21, 2018, the FSA was enacted into law. The FSA set up a program where inmates convicted of non-violent offenses could earn up to 15 days credit for every 30 days participation in prison jobs. However, the FSA did not specify how much programming a person in custody must complete or when the program would start. In January 2022 the Bureau of Prisons finalized a new rule codifying the bureau's procedures for the earning and application of credits under this system. FSA Time Credits, 87 FR 2705-01, codified at 28 C.F.R. § 523.40 et.

---

[2] "Although the PSR reported that this conviction arose when Petitioner placed a device in his parents' basement, not garage, designed to spark a propane explosion, the nature of his conviction was consistent with the brother-in-law's version. It was the nature of this conviction, Attempted Arson, that Agent Whitehead independently verified prior to seeking the search warrants. *Reynolds v. United States*, No. 3:05-CR-493, 2012 WL 12981962, at *6 (M.D. Pa. Aug. 15, 2012). Additionally, this conviction was not discussed at trial. *Id*. additionally, it was the *nature* of the conviction that agents independently verified in seeking search warrants."

seq.

The application of FSA credits is not available for everyone – the BOP only assigns people with minimal or law PATTERN scores to these programs and activities. The DOJ issued the risk and needs assessment tool, PATTERN, on July 19, 2019. *See* "The First Step Act of 2018: Risk and Needs Assessment, U.S. Department of Justice: Office of the Attorney General," https://www.bop.gov/inmates/fsa/docs/the-first-step-act-of-2018-risk-and-needs-assessmentsystem.pdf (July 2019). PATTERN assigns point values based on various factors such as including the inmate's age, sex offense history, instant violent offense, criminal history score, history of escapes, history of violence, education score, drug treatment while incarcerated, infraction convictions (any) current incarceration, infraction convictions (serious and violent) current incarceration, infraction-free (any) current incarceration, infraction-free (serious and violent) current incarceration, financial responsibility, programs completed, and work programming. PATTERN then returns a "score" of minimum, low, medium, or high-risk for recidivism. The First Step Act of 2018: Risk and Needs Assessment System - UPDATE," https://www.bop.gov/inmates/fsa/docs/the-first-stepact-of-2018-risk-and-needs-assessment-system-updated.pdf at pp. 10-11; see also Male Pattern Risk Scoring, https://www.bop.gov/ inmates/ fsa/docs/male_pattern_form.pdf.

After an inmate receives a PATTERN score and a risk category, BOP staff assesses need areas. Such need areas include anger/hostility, antisocial peers, cognitions, education, dyslexia, family/parenting, finance/poverty, medical, mental health, recreation/leisure/fitness, substance abuse, trauma, and work. *See* "Needs Assessment in the Federal Bureau of Prisons," https://www.bop.gov/inmates/fsa/docs/fsa_needs_assessment.pdf (August 2020 Update). BOP additionally identifies appropriate programming aimed at reducing the recidivism risk. The FSA

required that within 180 days after completion of PATTERN, BOP was required to complete an initial assessment for each inmate and expand programming. Within two years after that, BOP was required to "phase in" and develop and validate PATTERN for each inmate. 18 U.S.C. § 3621(h)(1) & (2). The FSA does not prescribe what factors DOJ must use to determine recidivism risk – it only calls for a categorization as minimum, low, medium, or high risk. Thus, DOJ released the PATTERN tool in July 2019 to determine such risk.

To be eligible for application of FSA time credits an inmate must (1) have demonstrated a recidivism risk reduction or maintained a minimum or low recidivism risk; and (2) have earned time credits "in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment." 18 U.S.C. § 3624(g)(1); see also 28 C.F.R. § 523.44.

Courts generally defer to interpretation of a statute adopted by an agency that Congress has "charged with [the] responsibility for administering the provision." *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 865 (1984) (finding if statute is silent or ambiguous agency's interpretation will be upheld if "based on a permissible construction of the statute"). Even if *Chevron* deference does not apply, the Supreme Court has recognized the courts give agency interpretations considerable and decisive weight. *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). In applying *Skidmore* deference to an agency's interpretation, courts consider "the thoroughness evident in [the agency's] consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Id*.[3] The Court finds the DOJ's approach reasoned, especially in light of the fact DOJ opened comment period, held two listening sessions, and met

---

[3] FSA called for the DOJ to categorize inmates as a minimum low, medium, or high risk but did not prescribe the methodology. The DOJ opened a comment period, two listening sessions, and met with an independent review to create the PATTERN tool. Of the factors it uses, the inmate's sex offender status, instant violent offense, and criminal history score are all static – the rest of the factors are dynamic and changeable.

with an independent review committee to discuss proposed changes when PATTERN tool came about in July 2019.

Petitioner argues BOP "cannot develop a Policy [sic] in violation of law that states otherwise and bar this Petitioner from Programming, Placement and other items under perceived 'crimes of violence." The Court will not disrupt the policy of the BOP. The Court will defer to the agency's interpretation of the FSA, and therefore will give the agency's methodology significant weight.

Next, Petitioner somehow attempts to pass through many hoops to reach his ultimate conclusion. He argues that because a 1978 conviction, which was used in his PSR, and which was used in his overall sentencing for the instant offense (terrorism related offenses) is not a "crime of violence," BOP is wrongfully withholding FSA credits from Petitioner. This is a stretch. First, regardless of what Petitioner states, the recidivism risk score looks at the *instant offense* and not at a crime in the PSR. Next, as provided in the background above, the instant offense is simply one static factor that the BOP uses to determine an individual's overall recidivism risk score. There are other factors that BOP uses to determine recidivism risk. Such dynamic factors include inmate's age, history of escapes, history of violence, education score, drug treatment while incarcerated, infraction convictions (any) current incarceration, infraction convictions (serious and violent) current incarceration, infraction-free (any) current incarceration, infraction-free (serious and violent) current incarceration, financial responsibility, programs completed, and work programming.

For these reasons, Petitioner's argument that this Court disagree with BOP policy that he be given programming because his crime is not a "crime of violence" is plainly not entitled to relief in the district court.

### III.     Conclusion

The Court hereby finds Petitioner's petition is plainly not entitled to relief and DENIES Petitioner's petition (Doc. 1).

**IT IS SO ORDERED.**
**Dated: September 30, 2022**

                                                   **/s/ J. Phil Gilbert**
                                                   **J. PHIL GILBERT**
                                                   **DISTRICT JUDGE**